United States Courts
Southern District of Texas
FILED
March 25, 2021
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | § | Cr. No. | **4:21cr155** |
| Plaintiff, | § | | |
| | § | | |
| v. | § | | |
| | § | | |
| DAVID FELT, | § | | |
| Defendant. | § | | |

### Indictment

### Count 1
Tax Evasion – 26 U.S.C. 7201
(Evasion of Payment)

The grand jury charges that:

From approximately 1998 through the present, in the Houston Division of

the Southern District of Texas and elsewhere,

**David Felt,**

defendant, a resident of Houston, Texas, did willfully attempt to evade and to

defeat the payment of the income taxes due and owing by him to the United States

of America for the calendar years 1986, 1987, 1994, 1995, 1996, and 1997.   The

total income taxes owed for those years is approximately $1,237,406.00, plus

1

interest and penalties, as determined by the U.S. Tax Court in the published

decision of *David J. Felt, et al., v. Commissioner of Internal Revenue*, T.C. Memo.

2009-245 (October 28, 2009).   The Tax Court's opinion was later affirmed by the

U.S. Court of Appeals for the Fifth Circuit in *David J. Felt, et al., v. Commissioner*

*of Internal Revenue,* 433 F.App'x 293 (5th Cir. 2011).   Defendant willfully evaded

and attempted to evade payment of his income tax liabilities for the years covered

by those court decisions by committing numerous affirmative acts of evasion, as

follows: concealing and to attempting to conceal from the Internal Revenue

Service both his income and the nature, extent, and ownership of his assets; placing

and attempting to place his funds, property, and other assets in the names of others;

conducting business through nominees and pretending that he received no

compensation for his work and had no income; routinely failing to file income tax

returns and routinely underreporting large amounts of income on any income tax

returns he did file; dealing extensively in currency; providing false information

about his income and assets to an IRS Collection Officer trying to collect

defendant's income tax liabilities; continually having his personal and daily living

expenses paid by entities or others; routinely keeping no bank accounts or credit

cards in his own name; and willfully paying personal expenses for himself and for

his family from funds belonging to the estate of a corporate debtor in bankruptcy, which also violated the terms and payment provisions of the bankruptcy court's Order Confirming Debtor's Plan of Reorganization.

In violation of 26 United States Code, Section 7201.

### Count 2
Tax Evasion – 26 U.S.C. 7201
(Evasion of Assessment)

That on or about October 23, 2012, in the Southern District of Texas, Houston Division, and elsewhere,

### David Felt,

defendant, a resident of Houston, Texas, who during the calendar year 2010 was married, did willfully attempt to evade and defeat a large part of the income tax due and owing by him and his spouse to the United States of America for the calendar year 2010, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent joint U.S. Individual Income Tax Return, Form 1040, on behalf of his spouse and himself, which was filed with the Internal Revenue Service.   In that return, defendant claimed a joint taxable income for 2010 of approximately $43,973.00, and that the amount of tax due and owing thereon was approximately $10,883.00.   In fact, as defendant then and there knew,

3

the taxable income for the calendar year was substantially larger than the amount reflected on defendant's filed joint 2010 U.S. Individual Income Tax Return and defendant owed a substantial additional amount of income taxes for 2010, approximately $200,585.00.

In addition to filing the false and fraudulent joint 2010 U.S. Individual Income Tax Return, defendant committed numerous other affirmative acts of evasion to avoid assessment of the substantial additional income taxes he and his spouse owed for 2010, including: concealing and attempting to conceal his income from the Internal Revenue Service; conducting business through nominees and pretending that he received no compensation for his work and had no income; dealing extensively in currency; providing false information about his income and assets to an IRS Collection Officer trying to collect defendant's income tax liabilities for 2010; continually having his personal and daily living expenses for the years below paid by entities or others; and routinely keeping no bank accounts or credit cards in his own name.

In violation of Title 26, United States Code, Section 7201.

**Counts 3 Though 5**
Tax Evasion – 26 U.S.C. 7201
(Evasion of Assessment)

During calendar years 2011, 2012, and 2013,

**David Felt,**

defendant, a resident of Houston, Texas, had a substantial amount of taxable

income and owed a substantial amount of U.S. Individual Income Taxes for each

year.   Well knowing that fact, defendant failed to timely file with the Internal

Revenue Service the U.S. Individual Income Tax Returns he was required to file

for those years on the following due dates, and he failed to pay to the Internal

Revenue Service the substantial income taxes due on those due dates.   Defendant,

in the Southern District of Texas, Houston Division, and elsewhere, did willfully

attempt to evade and defeat the income taxes due and owing by him for the

calendar years below by committing numerous affirmative acts of evasion, as

follows: concealing and attempting to conceal his income from the Internal

Revenue Service; conducting business through nominees and pretending that he

received no compensation for his work and had no income; dealing extensively in

currency; providing false information about his income and assets to an IRS

Collection Officer trying to collect defendant's income tax liabilities for the years

5

below; continually having his personal and daily living expenses for the years below paid by entities or others; and routinely keeping no bank accounts or credit cards in his own name.

The years for which defendant evaded and attempted to evade assessment of his U.S. Individual Income Taxes, the approximate dates on which the income tax returns for such years were due, and the approximate substantial additional income taxes due each year are as follows:

| Count | Year | Due Date of Return | Approximate Amounts of Tax Due and Owing |
|-------|------|--------------------|------------------------------------------|
| 3 | 2011 | April 17, 2012 | $146,123.00 |
| 4 | 2012 | April 15, 2013 | $15,379.00 |
| 5 | 2013 | April 15, 2014 | $6,311.00 |

In violation of Title 26, United States Code, Section 7201.

## COUNT SIX
### (18 U.S.C. § 157--Bankruptcy Fraud)

A.   **INTRODUCTION**

At all times material to this indictment:

1. **DAVID FELT ("FELT")**, defendant, was a local real estate executive

6

who was the sole principal and disbursing agent of Webster Restaurants, LTD.   He

resided in Houston, Texas.

2.  Webster Restaurants, LTD   ("Debtor" or "Webster Restaurants") filed a

voluntary Bankruptcy Petition for relief under chapter 11 of the Bankruptcy Code

on May 1, 2017.

3.  On August 31, 2017, the Debtor filed the Debtor's Disclosure Statement

("Disclosure Statement") and the Debtor's Plan of Reorganization ("Plan").   Of

note, the Plan provides that if necessary to effectuate the Plan, Gibraltar Finance &

Management, Inc., Carpe-Diem-Webster, Ltd., and David **FELT** (collectively, the

"Insiders") "will contribute funds to the success of [the] Plan as needed through the

term of the Plan."

4.  On October 18, 2017, the bankruptcy court entered its Order Confirming

Debtor's Plan of Reorganization (the "Confirmation Order").

5.  Carpe Diem Webster Trust ("Carpe Diem") was a trust managed by **FELT** for

the benefit of his grandchildren.

6.  Webster ETC, LLC, d/b/a Lorenzo's El Tiempo Cantina ("Webster ETC")

was a company that leased a building owned by Webster Restaurants for

$26,500.00 per month.   Webster ETC was 30 per cent owned by Rollie LLC

7

(owned by the Lorenzo Family) and 70 per cent owned by Carpe Diem.   Under an

Operating Agreement between Rollie LLC and Carpe Diem, the Lorenzo Family

managed and controlled Webster ETC.

7.  Hope Kobayshi Trust   owned a "Ground Lease" with Webster Restaurants of

the commercial building located at 20237 Gulf Freeway, Webster, Texas.

Lorenzo's El Tiempo Cantina is located in this building.   Webster Restaurants

paid Kobayshi Trust $10,280 per month on the Ground Lease.

## Creditors

8.  Harris County Et Al. Tax Claim is a creditor owed $37,886.65 for

2016 and 2017 ad valorem taxes, to be paid in 60 monthly payments of

approximately $843. This creditor retained all liens it currently held, whether for

pre-petition tax years or for the current tax year on any property of the Debtor until

it receives full payment of all taxes and interest owed. As of August 2020, the sum

of $137,891.64 was owed to Harris County Tax Authorities for unpaid ad valorem

property for tax years 2020 and prior.

9.  Clear Creek ISD Tax Claim is a creditor owed $60,285.73 for 2016

and 2017 ad valorem taxes, to be paid in 60 monthly payment of approximately

$1,588. This creditor retained all liens it currently held.   As of August 2020, the

sum $169,8671.92 is owed to Clear Creek ISD for unpaid ad valorem property for the tax years 2020 and prior.

10.   Jade Construction Claim is a creditor owed $325,000, plus 4.75 per cent Interest, for a mechanic's and materialmen's lien against the Debtor's real property, to be paid in 60 monthly payments of approximately $6,096.   This obligation was subsequently acquired by Webster Finance and, on March 9, 2020, proof of a claim was filed asserting a secured claim in the amount of $271,040.77 based on this debt.

11.   Mustang Security and Investigations, Inc. ("Mustang") Claim is a creditor owed $20,000, plus 4.5 per cent interest, for a mechanic's and materialman's lien against the Debtor's real property, to be paid in 60 monthly payments of approximately $375.

12.   Royal American Services, Inc. ("Royal American") Claim is a creditor owed $35,000, plus 4.75 per cent interest, for a mechanic's and materialman's lien against the Debtor's real property to be paid in 60 monthly payments of approximately $656.

13.   Webster Finance, LLC Claim is a creditor owed $441,903.85, plus 4.75 per cent interest, on a promissory note secured by a deed of trust, to be paid in 60

9

monthly payments of approximately $4,178.86.   On March 9, 2020, Webster

Finance filed proof of claim asserting a secured claim in the amount of $663,465.

14. Donald W. Guggenheim ("Guggenheim") Guggenheim Personal Claim is an

unsecured creditor who filed a proof of claim on September 25, 2017,   asserting a

general unsecured claim in the amount of $22,993.76.   On March 9, 2020,

Guggenheim filed a proof of claim asserting a general unsecured claim in the

amount of $17,245.19.

## Bankruptcy Process

15.   Bankruptcy is a process by which a debtor obtains relief from creditors (those

who are owed money by the debtor).   The process is designed to achieve an orderly

transfer of a debtor's assets to creditors from available assets truthfully and

accurately disclosed and to provide a "fresh start" to honest debtors by allowing

them to obtain a discharge or release of debt incurred prior to filing bankruptcy.

The process is conducted in federal court and is governed by the United States

Bankruptcy Code, which is found in Title 11 of the United States Code.

16.   United States Bankruptcy Code Chapter 11 (reorganization)--Chapter 11 is

available to corporations, individuals, partnerships, and other corporate entities that

want to preserve, protect, and reorganize a financially ailing business or an

10

individual's financial affairs. Reorganization provides debtors with an opportunity to restructure their existing debts and obligations while remaining in control of their business or personal assets. Upon the filing of a Chapter 11 case, the debtor becomes the "debtor-in-possession," and must fulfill certain statutory duties of a trustee. 11 U.S.C. § 1107. In order for a Chapter 11 debtor to successful reorganize, it must propose a repayment plan of some or all of what is owed. The plan must be accepted by creditors and approved by the court. If unsecured creditors are not receiving full repayment, the balance of what is owed to them is discharged.

17. Plans usually provide paying unsecured creditors over time a small percentage of what they are owed. Once the court confirms the Chapter 11 Reorganization payment plan, the debtor receives a discharge of the unsecured debt not provided for in the plan, and the terms of the plan become binding on all parties. The debtor makes plan payments directly to the creditors. If circumstances change, a plan modification may be necessary, or the court may convert the case to a Chapter 7 liquidation case, depending on the terms of the confirmed plan or reorganization.

18. United States Bankruptcy Code Chapter 7 -- an individual or a business may file

a "petition" in a Chapter 7 bankruptcy in which all of a debtor's debts may be

discharged or released by the bankruptcy court.   A Trustee is appointed by the United States Trustee's Office to gather and sell the debtor's nonexempt assets and use the proceeds from the sale of such assets to pay creditors.   Part of the debtor's property may be subject to liens and mortgages that pledge the property to other creditors. The benefit to a debtor under Chapter 7 is the issuance of a discharge which prevents creditors from pursuing the collection of debts incurred before the bankruptcy was filed.   Creditors will only be paid from the proceeds of the sale or liquidation of assets of the debtor's estate that are obtained by the Chapter 7 Trustee.

19. As part of the bankruptcy process, every debtor must submit to a meeting conducted by the Trustee, or an employee of the United States Trustee's Office, who is assigned to oversee and to administer the bankruptcy case.   At this meeting, referred to as a "creditors' meeting," the debtor is placed under oath and questioned by the Trustee and any creditors who choose to attend about the information contained in the bankruptcy documents and about the debtor's general financial condition.   In order for the bankruptcy system to work for all parties, it is imperative for the debtor to be truthful and forthright in all aspects of the bankruptcy process. The bankruptcy system is based on an honor system where the debtor agrees to provide all of the necessary information requested by the Trustee and to assist the

Trustee in collecting all assets of the debtor, and to comply with the court's orders to obtain the relief desired under the chapter the case was filed.

## B.     THE SCHEME TO DEFRAUD

20.   From in or about May 1, 2017 and continuing to on or about August 31, 2020, in the Houston Division of the Southern District of Texas and elsewhere,

**DAVID FELT**

defendant herein, having devised and intending to devise a scheme and artifice to defraud the bankruptcy court and creditors, for the purpose of executing and concealing and attempting to execute and conceal the scheme and artifice, filed a bankruptcy petition under Title 11, in Bankruptcy case number 17-32793, and made false and fraudulent representations, claims, and promises concerning and in relation to a proceeding under Title 11, as more fully set forth below.

## C.     EXECUTION OF THE SCHEME TO DEFRAUD

21. The scheme and artifice essentially consisted of the defendant, who was the principal owner, president, and manager of Webster Restaurants LTD, using Webster Restaurants' Debtor-In-Possession bank account to funnel a substantial amount of money from this account for his personal benefit, the benefit of his family members, and to other non-creditor businesses after filing for bankruptcy under

13

Chapter 11 and receiving court approval of a Chapter 11 Payment Plan to pay substantial debts owed to creditors.

## D.    THE MANNER AND MEANS OF THE SCHEME TO DEFRAUD

22. It was part of the scheme and artifice to defraud that the defendant on May 1, 2017, would and did file a Chapter 11 bankruptcy case on behalf of Webster Restaurants which owned a lease on land and improvements of commercial property located in Webster, Texas.

23. It was further part of the scheme and artifice to defraud that the defendant would and did enter into an agreement between Webster Restaurants and Webster ETC, where Webster ETC paid monthly lease payments to Webster Restaurants.

24. It was further part of the scheme and artifice to defraud that the defendant would and did testify under oath that as the disbursing agent of the Chapter 11 Payment Plan he would use the proceeds from the lease with Webster ETC to pay creditors of the Debtor, Webster Restaurants, and if additional funds were needed to pay creditors the defendant had personal funds available to fund the plan to keep the plan from defaulting.

25. It was further part of the scheme and artifice to defraud that the defendant would and did acknowledge to the bankruptcy court that no "Insider" would be paid from

the Plan during the period creditors were paid.

26. It was further part of the scheme and artifice to defraud that the defendant, without mistake of fact, did not pay all creditors from the Webster ETC lease funds as agreed to in the Chapter 11 Reorganization payment plan in 2018 and in 2019.

27. It was further part of the scheme and artifice to defraud that from January 1, 2018 thru November 18, 2019 the defendant would and did funnel approximately $353,112.00 of the debtor's monthly cash flow to his family members, convenience stores, a criminal attorney representing his son, iTunes, and drug stores, attributable and unattributable cash withdrawals, an entity controlled by Debtor, private school tuition, and made extraordinary purchases at restaurants and other non-authorized recipients.

28. It was further part of the scheme and artifice to defraud that the defendant would and did cause creditors to file a Motion to Convert the Chapter 11 case to a Chapter 7 bankruptcy case.

29. It was further part of the scheme and artifice to defraud that the defendant would and did cause the Chapter 7 bankruptcy Trustee to reach a Compromise and Settlement to resolve the debt with creditors.

15

### E.  MATERIAL FALSE AND FRAUDULENT MISREPRESENTATIONS, CLAIMS, AND PROMISES

30. Materiality:   on or about October 18, 2017, the defendant, **DAVID FELT**, testified under oath to the following questions:

> **Debtor's Counsel**: How much will the Debtor need to fund the Plan on a monthly basis?
>
> **FELT**: It's approximately $22.500.00, which is equal to the income under the lease agreement.
>
> **Debtor's Counsel**: What is the amount that you will be receiving under the lease? A: $22,500.00.
>
> **The Court**: And you are confident that El Tiempo will generate enough traffic at its restaurant to pay the reorganized Debtor $22,500.00 per month?
>
> **FELT**: Absolutely.
>
> **Debtor's Counsel**: If a given month comes down the road where El Tiempo can't pay or they say we are not going to pay, there are other sources of money available to you personally in order to fund this Plan to keep this Plan from defaulting.
>
> **FELT**: That's correct, we have other resources and we would inject capital

16

into the company in order to keep it from falling into default.

31. False Declaration:   on July 8, 2019, the bankruptcy court held a show cause

hearing before United States Bankruptcy Judge Jeff Bohm, United States

Bankruptcy Judge, where **FELT** gave the following testimony:

>**Creditor's Counsel:** You listed a payment to **R. K.**, I don't know if I
>
>pronounced that correct, it is spelled **K- - - - - - - I** in your description in
>
>April 2019 for $5,000.00, is that correct?
>
>**FELT**: Yes.
>
>**Creditor's Counsel**: What was that payment for?
>
>**FELT**: Legal fees.
>
>**Creditor's Counsel**: What type of legal fees?
>
>**FELT**: He was working on something, it was just legal.
>
>**Creditor's Counsel**: For the Debtor?
>
>**FELT**: Um, it was- I'd say partially it was for the Debtor. But in general,
>
>it was probably for Jason {i.e., **FELT'S** son}.
>
>**Creditor's Counsel**: Isn't he a criminal attorney?
>
>**FELT**: Yes.
>
>**The Court**: Hold on a minute. Are you saying that the Debtor had some

kind of criminal problem?

**FELT**: No, your Honor I'm not.

**The Court**: So that money was not for the Debtor at all, was it? You need to be---you need to understand you've testified, that you're supposed to be telling me the truth, the whole truth, and nothing but the truth, do you understand that sir?

**FELT**: I do, your Honor.

**The Court**: Alright now I'm going to ask you the question. Was the $5,000.00 in any way, shape or form, to benefit the Debtor, yes or no? Answer my question.

**FELT**: Yes, your Honor, I was just thinking about it. No.

**The Court**: Thank you. So, what you told Mr. Million initially was wrong, wasn't it?

**FELT**: Well, the matter was probably related in some fashion.

**The Court**: Tell me how.

**FELT**: Well, it involved a criminal matter, it involved a son and it involved a relationship to companies with which he had been involved with.

18

**The Court**: Did it involve the Debtor?

**FELT**: It was not principally the Debtor...

**The Court**: Was it the Debtor at all? Tangentially?

**FELT**: No, the Debtor did not commit any crimes.

**The Court**: So, the $5,000.00 in no way benefitted the Debtor, did it?

**FELT**: The $5,000.00 did not benefit the Debtor.

Falsity: Defendant in truth and in fact, well knew that the funds used to pay a criminal lawyer for his son's benefit did not involve the DEBTOR-Webster Restaurants.

In violation of Title 18, United States Code, Section 157 (1) and (3).

## COUNT SEVEN
### (18 U.S.C. § 157--Bankruptcy Fraud)

31. The Grand Jury hereby incorporates by reference the sections entitled "The Scheme and Artifice to Defraud," "Execution of the Scheme to Defraud," and "Manner and Means of the Scheme in paragraphs 1-27 in Count 1 above.

31. Materiality: on or about July 1, 2019, the defendant, **DAVID FELT**, made the following material false and fraudulent representations, claims, and promises in that he filed with the Court Monthly Accounting Reports for Webster Restaurants LTD,

19

the Debtor, containing payments to **FELT'S** son, daughter, and daughter-in-law who were classified as "Insiders" to whom payments were specifically prohibited by the Debtor's Plan of Reorganization (Chapter 11 Payment Plan).

False and Fraudulent documents: Defendant in truth and in fact, and he well knew, that his son, daughter, and daughter-in-law were classified as "Insiders" and should not have received funds from the lease payments from Webster ETC.

In violation of Title 18, United States Code, Section 157 (1) and   (3).

## COUNT EIGHT
### (18 U.S.C. § 153--Embezzlement Against Bankruptcy Estate)

From on or about January 1, 2017 and continuing until on or about November 18, 2019, in the Southern District of Texas and elsewhere,

## DAVID FELT

the defendant herein, by virtue of his participation in the administration of a debtor's estate as the disbursing agent of the debtor-in-possession bank account of the Debtor, Webster Restaurants, did knowingly and fraudulently appropriate to his own use, embezzle, spend, and transfer property belonging to the estate of the debtor approximately $353,112.00 contrary to the terms and payment provisions of

the bankruptcy court's Order Confirming Debtor's Plan of Reorganization.

In violation of Title 18, United States Code, Section 153.

A TRUE BILL:

## Original Signature on File

Foreperson of the Grand Jury

JENNIFER B. LOWERY
ACTING UNITED STATES ATTORNEY

Quincy L. Ollison
Assistant United States Attorney

Charles J. Escher
Assistant United States Attorney

21